S. LANE TUCKER
United States Attorney

MAC CAILLE PETURSSON
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: mac.caille.petursson@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CALEB FRENCH,<br><br>Defendant. | No. 3:24-cr-00131-SLG-MMS |

**MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through undersigned counsel, hereby submits this memorandum in support of its request under 18 U.S.C. § 3142(e) and (f) for the Court to order Defendant Caleb French detained pending trial. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("[T]he government may proceed in a detention hearing by proffer or hearsay."). As explained below, the Defendant primarily poses a significant danger to this community, and this Court should find that there are no conditions of release that can adequately mitigate that risk.

## I. FACTUAL BACKGROUND

Defendant, Caleb French, is an enlisted soldier in the Air Force. Defendant serves as an airman. Defendant surreptitiously took images of young children in the community to turn into artificial intelligence (AI)-generated child sexual abuse material (CSAM). Defendant used encrypted and privacy-enhancing applications, such as APPLICATION A,[1] to access, possess, and distribute CSAM.

In August 2024, an individual[2] reported the Defendant to the Air Force Office of Special Investigation (AFOSI). This individual claimed that Defendant wanted to commit sexual assaults against minors. AFOSI reviewed the complaint and executed a search warrant at Defendant's residence, where he lives in a dormitory on Joint Base Elmendorf–Richardson (JBER). A subsequent partial forensic review of Defendant's devices revealed that multiple devices, including a cell phone, thumb drive, and laptop were replete with contraband. Those devices contained, among other evidence, hundreds of videos and images depicting sexual abuse of children as young as infants, dating back years. Forensic review is still ongoing.

//

//

---

[1] The name of Application A is known to law enforcement but anonymized in this affidavit to protect operational security. Application A remains active and disclosure of the name of the application would potentially alert its users to the fact that law enforcement action is being taken against users of the application, thereby provoking users to notify other users of law enforcement action, flee, and/or destroy evidence. Accordingly, to protect the confidentiality and integrity of the ongoing investigation involved in this matter the application will be identified herein as "Application A".

[2] That individual was later arrested for similar conduct.

*U.S. v. French*
3:24-cr-00131-SLG-MMS            Page 2 of 16
Case 3:24-cr-00131-SLG-MMS    Document 7    Filed 12/23/24    Page 2 of 16

On December 17, 2024, a federal Grand Jury returned an indictment charging French with one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).[3]

## II. LEGAL STANDARD

The United States requests a detention hearing because the Defendant has been charged with a felony that "involves a minor victim." 18 U.S.C. § 3142(f)(1)(E). Pursuant to § 3142(g), the Court must determine whether there are any "conditions of release that will reasonably assure the appearance of [the Defendant] as required and the safety of any other person and the community." When making this determination, the Court should consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the Defendant's history and characteristics, and (4) the nature and seriousness of the danger to the community posed by the Defendant's release. *See* 18 U.S.C. § 3142(g). The government bears the burden of proving that the Defendant is a risk of flight by a preponderance of the evidence and that he is a danger to the community by clear and convincing evidence. *See United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

//

---

[3] As described herein, the investigation also revealed conduct that may support a charge of attempted sexual exploitation of a child, in violation of 18 U.S.C. 2252A(a)(7) and 18 U.S.C. 1466A—specifically, the surreptitiously taken photos depicting minors in the community to be transformed into CSAM. Investigation remains ongoing but, the government nonetheless believes that this uncharged conduct is relevant to the Court's pretrial analysis for detention in this case.

*U.S. v. French*
3:24-cr-00131-SLG-MMS         Page 3 of 16
Case 3:24-cr-00131-SLG-MMS    Document 7    Filed 12/23/24    Page 3 of 16

### III. ARGUMENT

As an initial matter, there is a presumption of detention based on the nature of the charges in the Indictment. Both counts involve minor victims and are considered "crimes of violence" for purposes of 18 U.S.C. § 3142(f)(1)(A). *See* 18 U.S.C. § 3156(a)(4)(c) (defining "crime of violence" to include "any felony under chapter 109A, 110, or 117"). Of those, one charge —Distribution of Child Pornography (Count 1) — carries a rebuttable presumption in favor of pretrial detention. 18 U.S.C. § 3142(e)(3)(E). Accordingly, this Court begins its analysis by presuming that no condition or combination of conditions will reasonably ensure the Defendant's appearance at trial or the safety of the community. 18 U.S.C. § 3142(e)(3)(E). Even if the Defendant does rebut this presumption, it "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in [18 U.S.C.] § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citations removed)).

Based on careful consideration of the factors enumerated in 18 U.S.C. § 3142(g), as further detailed below, the United States submits that there is no condition or combination of conditions that will reasonably assure the safety of the community or the Defendant's appearance should he be released pending trial.[4]

//

//

---

[4] The United States is not aware of any proposed release plan at this time. The United States will make further argument regarding the Defendant's history and risks if released at the arraignment and detention hearing, if necessary, after consideration of any proposed release plan.

*U.S. v. French*
3:24-cr-00131-SLG-MMS        Page 4 of 16
Case 3:24-cr-00131-SLG-MMS    Document 7    Filed 12/23/24    Page 4 of 16

### A. The Nature and Circumstances of the Offense Charged

Starting first with the nature and circumstances of the offenses, the alleged conduct is exceptionally serious. Indeed, the Defendant's child exploitation offenses have been designated by Congress as "crimes of violence" for which the appropriateness of detention is presumed as a matter of law.[5] Moreover, if convicted Distribution of Child Pornography (Count 1), the Defendant faces a mandatory-minimum sentence of five years imprisonment. The CSAM files the Defendant distributed and possessed include the youngest and some of the most helpless victims - toddlers. And in his quest to satisfy those sexual desires, the Defendant actively participated in and contributed to online communities dedicated to the abuse and exploitation of children and engaged with hundreds of like-minded offenders. Through his actions, the Defendant contributed to the continued victimization of the real children depicted in those video and image files, and he fueled the demand for more heinous content.

Notably, the Defendant continued this heinous conduct after law enforcement searched his home and seized his devices – all while knowing he remained under investigation. Despite that, the Defendant remained undeterred.

This factor weighs in favor of detention.

//

//

---

[5] *All* federal child pornography offenses are classified under the bond statutes as crimes of violence, *see* 18 U.S.C. § 3156(a)(4)(C), and all but simple possession carry a presumption of detention, *see* 18 U.S.C. § 3142(e)(3).

*U.S. v. French*
3:24-cr-00131-SLG-MMS    Page 5 of 16
Case 3:24-cr-00131-SLG-MMS    Document 7    Filed 12/23/24    Page 5 of 16

## B. The Weight of the Evidence

The evidence against the Defendant is strong and primarily based on preliminary forensic review of his devices, which were seized pursuant to two different search warrants, in August 2024 and December 2024. The Defendant's cellphone, laptop, and thumb drive contained massive amounts of contraband.

First, during a review of the reporting individuals cell phone, law enforcement observed Defendant sending the reporting individual two images of CSAM in August 2024 depicting the following:

> **a.** One image depicted a naked grown man laying down with a large erect penis. Lying on top of the man is a naked young boy whose age seemed approximately five to seven years old.
> **b.** The second image depicted the upper part of a shirtless young boy, whose age seemed approximately five to seven years old, who had his face near what appeared to be a grown man's testicles and erect penis. [6]

A review of the screenshots of the text messages between Defendant and the reporting individual showed the Defendant telling the reporting individual that while he [the Defendant] was being anally penetrated once, he surreptitiously watched "cheese pizza" to orgasm. The term cheese pizza in known to law enforcement to be utilized by individuals seeking sexually explicit material depicting minors to refer to child pornography.

//

//

---

[6] Law enforcement does not have evidence that the Defendant is pictured in these images, however extensive investigation and review of all his devices is still ongoing.

*U.S. v. French*
3:24-cr-00131-SLG-MMS            Page 6 of 16
Case 3:24-cr-00131-SLG-MMS   Document 7   Filed 12/23/24   Page 6 of 16

Additionally, Defendant sent the reporting individual a video via an APPLICATION A link in August 2024 that was approximately 57 seconds in length and depicted various folders consistent with known CSAM labels. CSAM is briefly displayed throughout the video. Names of the folders containing visible CSAM included rape, CP, teens, deep web pedo, SnapChat girls, young girls alone, and incest.

Furthermore, Defendant's status on APPLICATION A indicated he was an "Influencer". If a user is deemed an "Influencer", it means they are actively using the messaging app to communicate with their followers, often creating a dedicated channel or group where they share exclusive content, updates, and engage with their community in a more direct and intimate way compared to other social media platforms. APPLICATION A has cross platform access and accounts can be synced across smartphones, desktops and web browsers. APPLICATION A is often used by individuals seeking to gain access to CSAM, due to its focus on privacy and security features. In order to gain access to private groups, the user account must be vetted and validated. Depending on the group users may have to ascertain specific invite links, send pictures, or go through a myriad of steps to gain access to the group. Once a user deletes their account, it cannot be recovered, and all associated data, including private groups, are permanently erased. To access private groups again, users would need to create a new account and request to be added to the private groups again, which depending on the privacy settings may entail a lengthy process to regain the same status.

//

//

*U.S. v. French*
3:24-cr-00131-SLG-MMS          Page 7 of 16
Case 3:24-cr-00131-SLG-MMS    Document 7    Filed 12/23/24    Page 7 of 16

When AFOSI executed a search warrant of the Defendant's residence in August 2024 investigators seized multiple electronic devices, including a laptop. A preliminary review of the laptop revealed 500 known CSAM images, identified by hash values from the National Center for Missing and Exploited Children (NCMEC) known CSAM series.

In addition, Defendant's Google Search history indicated that he was searching for the closest child development centers to his current location. It is worth noting that the Defendant does not have any children. There is, however, an elementary school within approximately a three-minute walk from his residence.

Additional investigation revealed the Defendant appeared to be sharing a OneDrive containing CSAM with other unidentified APPLICATION A users. OneDrive is a cloud storage service provided by Microsoft that allows users to store, access, and share files from any device with an internet connection, essentially acting like a virtual hard drive in the cloud where you can save documents, photos, and other data across multiple devices. In addition to APPLICATION A links, the Defendant sent the reporting individual an iMessage in August 2024 containing a picture of a fully clothed prepubescent boy sitting in a grocery cart in Costco. Defendant appeared to surreptitiously take the photo and sent it to CW1 with the caption "I seen a blonde the other day, got his picture. He was super fucking adorable." Defendant and the reporting individual discussed via iMessage how they could use the photos Defendant takes of children in a virtual reality setting where they could create CSAM. IMessages below are between an individual in blue and Defendant in grey:

*U.S. v. French*
3:24-cr-00131-SLG-MMS               Page 8 of 16
Case 3:24-cr-00131-SLG-MMS    Document 7    Filed 12/23/24    Page 8 of 16



//

//

//

//

//

*U.S. v. French*
3:24-cr-00131-SLG-MMS        Page 9 of 16



On August 13, 2024, the reporting individual stated to a another individual that the Defendant had shared more images, but he dared not save. Law enforcement reviewed the images and observed a compilation of photos of children. Pictured below are messages sent in blue by the reporting individual to another individual that contain a gallery of non-CSAM photos the Defendant had previously sent to the reporting individual.



AFOSI also executed a search warrant on Defendant's Apple account, which revealed additional possession and distribution of CSAM materials. Specifically, AFOSI Digital Forensic Unit (DFE) reviewed approximately 258 artifacts. Of those 258, a total of 24 Artificial Intelligence (AI) – Child Exploit artifacts a total of

*U.S. v. French*
3:24-cr-00131-SLG-MMS              Page 10 of 16
  Case 3:24-cr-00131-SLG-MMS    Document 7    Filed 12/23/24    Page 10 of 16

four artifacts corresponded to Project Vic (Victim Identification Center)[7] Hashes while the other 20 were identified by DFE as also relevant CSAM material. The Federal Bureau of Investigation also reviewed the Apple warrant return and noted images on Defendant's computer created by AI and depicted identifiable minors engaging in sexually explicit conduct. Three explicit images are described below:

**Image 1:** Naked, prepubescent girl with an adult male's penis in her mouth. Adult Male caption reads, "oh my god, you are the nastiest little girl in the world! Yeah! Suck it! Take it all in in!"

**Image 2:** Naked, prepubescent girl with an adult male's penis near her face, which is covered in the adult male's semen, straddling a naked adult female's face. Also depicted is a naked prepubescent boy at the head of the adult female. The image's captions read as follows:

> Prepubescent girl: "who's nasty now Daddy? I got your come all over my face and I'm pissin' right in mommy's mouth!"
>
> Prepubescent boy: "Oh my god! She's lettin' you piss right in her fuckin' mouth…mom's got my come all over her face and she's swallowing your fucking piss!"

//

//

---

[7] Project Vic is a non-profit organization that utilizes technology to compile online child abuse images into one single repository, tagging each image and video frame with a unique identifier (hash), accessible by law enforcement.

*U.S. v. French*
3:24-cr-00131-SLG-MMS                Page 11 of 16
Case 3:24-cr-00131-SLG-MMS   Document 7   Filed 12/23/24   Page 11 of 16

**Image 3:** Prepubescent girl laying naked on a bed with vagina exposed. Naked adult male has hand on vagina and is straddling the girl's face, forcing his testicles into her mouth.

Law enforcement checked Defendant's account on APPLICATION A on December 18, 2024, where he previously sent messages and links containing CSAM and noted that the Defendant's account was still "active" online, i.e., the previous search and seizure of his electronic devices from August 2024 did not deter Defendant from continuing to utilize that account.

Law enforcement also reviewed content from the thumb drive that was found connected to the Defendant's Smart TV in his residence in August 2024. A review of the thumb drive revealed approximately 600 items of suspected CSAM and over 16,000 items of possible CSAM. Many of these items were located in a set of folders named as follows: "BIK", "Twink", "YB Pictures", and "YB Videos". The naming of the folders involves common terms known to law enforcement to describe CSAM genre. In addition, over 500 items of interest to include sexually explicit computer generated or cartoon depictions of apparent children and bestiality were observed.

In total, partial review of devices seized from the first August 2024 search warrant has revealed over a thousand images of suspected child sexual abuse material, this includes images/videos of sexual acts with children. In addition, law enforcement also observed several images that appear to be taken of apparent children in grocery stores and videos of a person masturbating to these images. Law enforcement also observed over ten thousand

*U.S. v. French*
3:24-cr-00131-SLG-MMS            Page 12 of 16
Case 3:24-cr-00131-SLG-MMS   Document 7   Filed 12/23/24   Page 12 of 16

images of partially clothed apparent children and hundreds of AI generated/animated CSAM.

In December 2024, law enforcement conducted surveillance of the Defendant at a reindeer farm in the Matanuska Valley. Defendant appeared to gravitate toward a family with a young child and was purportedly seen panning with his phone in the direction of the child and may have surreptitiously photographed the child. Defendant was observed leaving the farm after the family with the child left. The reindeer farm is a place where children are known to congregate and schools are known to take field trips, particularly during the holiday season. Defendant has no children, he does not appear to be in care of any children, nor did he visit the reindeer farm with, for instance, friends who had children. Defendant did not appear to engage in feeding or petting any of the farm animals, which are the predominant activities advertised on the reindeer farms website. After potentially obtaining photographs of the young child, Defendant left the farm and surveillance observed him pull off the road and out of view.

In December 2024, law enforcement executed another search warrant on Defendant's home, person, and vehicle and recovered additional devices that are being reviewed.

As previously noted, there are thousands of images and videos stored on Defendant's devices, saved across various applications and in numerous folders. The evidence shows that, at the very least, Defendant continued to surreptitiously take photos of children in the community, and although review of his devices is still underway, Defendant was active on APPLICATION A (where he previously shared CSAM) in late

*U.S. v. French*
3:24-cr-00131-SLG-MMS			Page 13 of 16
Case 3:24-cr-00131-SLG-MMS   Document 7   Filed 12/23/24   Page 13 of 16

December 2024, and law enforcement has reason to believe that additional CSAM will be found on those devices.

This factor weighs in favor of detention.

### C. The History and Characteristics of the Defendant

Although this is his first arrest, the Defendant appears to have been engaging in this type of illicit conduct for years based on the search of his devices. This was merely the first time he was caught. That the Defendant has engaged in this conduct for years demonstrates his underlying sexual interest in children. The Defendant engaged in these offenses while holding a position with the Air Force and representing the United States as an enlisted soldier and concealed them from the Air Force. Moreover, the Defendant is believed to have continued to engage in this conduct after being put on notice that he was under investigation for such conduct.

This factor weighs in favor of detention.

### D. The Nature and Seriousness of the Danger to the Community that Would Be Posed by the Defendant's Release

The Defendant poses a serious risk to the community. Not only did he distribute CSAM to others, but he appeared to be taking photos of children in his community to turn into AI-generated CSAM. Defendant currently lives on JBER, which is home to many families with children. While Defendant may live alone in a dormitory, it is across the street from an elementary school, filled with children. Defendant's search history, and surveillance history, indicate a concerning trend of seeking out places where children may be found and pose a great risk to the community if he continues to act on those interests.

*U.S. v. French*
3:24-cr-00131-SLG-MMS         Page 14 of 16
Case 3:24-cr-00131-SLG-MMS   Document 7   Filed 12/23/24   Page 14 of 16

The risk of hands-on offense is incalculable, but as are the risks that Defendant continues to surreptitiously take photos of children in his community, transform them into AI-generated CSAM, and possess devices filled with CSAM. Cell phones and other devices are ubiquitous, easy to conceal, and easy to obtain.

Thus, while computer monitoring may address the danger posed by less sophisticated offenders, the record provides ample reason to conclude that this Defendant could evade court-ordered restrictions and would continue to pose a serious danger if released.[8]

## IV. CONCLUSION

For years, the Defendant broke the law with impunity and operated without detection from those around him. Were he to be released, he would return to the same circumstances in which he was able to offend for years—an environment in which he has access to countless young children in the community who fit his CSAM preferences.

Even the most restrictive sets of release conditions require a defendant's good faith compliance in order to be effective. *See Hir*, 517 F.3d at 1092 (citing *United States v. Tortora*, 922 F.2d 880, 886 (1st Cir. 1990)). The Defendant's longstanding sexual interest in children, combined with his ongoing course of conduct for which he has evaded accountability until very recently, gives little basis to conclude that the Court can expect to see such good faith compliance here. And if the Defendant were to reoffend while on pretrial release, not only would the harm caused by such recidivist conduct likely be severe,

---

[8] Indeed, the Defendant was arrested last week with two additional smartphones.

*U.S. v. French*
3:24-cr-00131-SLG-MMS    Page 15 of 16
Case 3:24-cr-00131-SLG-MMS    Document 7    Filed 12/23/24    Page 15 of 16

but it would be inflicted on the most vulnerable members of his community—minor children. Given the serious nature of the Defendant's conduct and the penalties he faces if convicted, there are no conditions that would ensure his appearance in court or the protection of the community if he were to be released.

Accordingly, the Defendant should be detained pending trial pursuant to 18 U.S.C. § 3142(e).

RESPECTFULLY SUBMITTED December 23, 2024 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

s/ *Mac Caille Petursson*
MAC CAILLE PETURSSON
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2024 a true and correct copy of the foregoing was served electronically on all counsel of record.

*s/ Mac Caille Petursson*