Jane M. Imholte
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: jane_imholte@fd.org

*Counsel for Defendant Caleb French*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CALEB FRENCH,<br><br>Defendant. | Case No. 3:24-cr-00131-SLG-MMS<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

Defendant Caleb French, through counsel, Jane M. Imholte, Assistant

Federal Defender, submits the following Memorandum in support of a jointly

recommended sentence of 120 months in prison.

## I.    INTRODUCTION

Caleb French is a 28-year-old man with no previous criminal history in

need of intervention and treatment.  His offenses, while undoubtedly serious,

were committed behind a computer screen.  There is no evidence of any hands-

on offense or attempt at the same.  Mr. French readily accepted responsibility

for his offense and also admits that he needs help.

## II. THE GUIDELINES

Mr. French technically agrees with the guideline calculation as contained in the Presentence Report ("PSR" at Dckt. 49). Mr. French has no criminal history, making him a Criminal History Category I. The Total Offense Level is 34. The resulting guideline range would be 151-188 months in prison, followed by a minimum of five years to life of supervised release. This range suggests an astounding sentence for a first-time offender who has never touched a child. In fact, a court might well describe such a sentence as "draconian," "unconscionably harsh," and yielding "unjust and sometimes bizarre results." See, e.g., *United States v. Grober*, 624 F.3d 592, 596 (3rd Cir. 2010); *United States v. Overmyer*, 663 F.3d 862,867 (6th Cir.2011) (Merritt, dissenting); *United States v. Gray*, 649 F. 3d 955, 964 (9th Cir.2011)(Berzon, concurring).

## III. OUTSTANDING OBJECTIONS TO THE PSR

A. **The JVTA fine should not be imposed, as 18 U.S.C. § 3014 has expired.**

In short, the JTVA was enacted in 2015 and expired on September 20,

2025: "Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on September 30, 2025." 18 U.S.C. § 3014(a). As such, the court is not authorized to impose this assessment.

Even without the sunsetting of the JVTA, the statute requires the court to impose a $5,000 additional special assessment for *non-indigent* people convicted of the instant offense. Mr. French is indigent and likely to remain so for many years to come, as noted at Paragraph 71 of the PSR: "Based on the defendant's lack of income and assets and anticipated restitution, it does not appear that he has the ability to pay a fine." Mr. French therefore requests that the court find that he is indigent and that the JVTA fine not be imposed.

### B. Mr. French maintains his objection to Suggested Special Condition 3.

The primary goal of supervised release is to "ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison . . . but still needs supervision and training programs after release." S. Rep.No. 225, 98th Cong., 1st Sess. 54 (1983). Supervised release also functions as an important tool to promote public safety. *See* 18 U.S.C. §§ 3583(c), 3553(a)(2)(C). The proposed special condition is not

Case 3:24-cr-00131-SLG-MMS     Document 53     Filed 10/08/25     Page 3 of 16

related to the stated goal of supervised release.   Mr. French should not face being jailed for inability to make financial payments.

### C. Mr. French maintains his objection to Suggested Special Conditions 8 and 9.

As noted in the PSR at page 29 of 30, Mr. French does not object wholesale to the requested special conditions, but asks that the language be modified as noted.

### III.  THE SENTENCING GUIDELINES RANGE IN THIS CASE DESERVES LESS RESPECT BECAUSE IT WAS NOT THE RESULT OF THE SENTENCING COMMISSION'S PARTICULAR EXPERTISE

On February 17, 2013, the United States Sentencing Commission submitted to Congress a comprehensive report examining federal sentencing policy in Child Pornography cases.[1] Among its findings, the Commission announced that prison sentences for defendants convicted of federal child pornography offenses have almost doubled in the past decade, due in large part to penalty enhancements in U.S.S.G. § 2G2.2 that now apply to most offenders, and thus fail to differentiate among them in terms of their

---

[1]  The 26-page executive summary can be accessed at:
http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/Executive_Summary.pdf.

*United States v. Caleb French*
Case No. 3:24-cr-00131-SLG-MMS                                                      Page 4

culpability. *See* Chapter 8 at 209.[2] At the same time, rates of within guidelines sentences in child pornography cases have dropped markedly: In the year before *Booker*, the within-guideline rate was almost 80%. After *Kimbrough*, the rate dropped to 41%, and in fiscal year 2011 dropped further still to less than 33%." Melissa Hamilton, SENTENCING POLICY ADJUDICATION AND EMPIRICISM, Ga. St. U.L. Rev. at 7 (forthcoming) (quoting United States Sentencing Commission, Report on the Continuing Impact of *United States v. Booker* on Federal Sentencing A73 (2012).[3] These sentences indicate that a growing number of courts view the current sentencing scheme as overly severe for certain offenders.

The undisputed guideline in this case is 151-188 months, which is overly severe for a first-time, non-contact offense. In this instance, the advisory range is entitled to less deference in part because it was not the product of the Sentencing Commission's particularized institutional expertise.

### A.     This Guideline is advisory only.

In *United States v. Booker*, 543 U.S. 220, (2005), the Supreme Court

---

[2]  Full text available at:
http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm.

[3]  Full text available at: http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2232936.

declared the Federal Sentencing Guidelines advisory to avoid the Sixth Amendment error inherent in the federal sentencing scheme. Each time the Supreme Court has returned to the *Booker* remedial opinion, it has embraced its central holding. *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007) (*Booker* instructed district courts to read the United States Sentencing Guidelines as "effectively advisory"; *Spears v. United States*, 129 S. Ct. 840, 842 (2009) (per curiam) ("cocaine Guidelines, like all other Guidelines, are advisory only".); *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (per curiam) ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.").

Apart from the fact that, in this instance, the advisory guideline factor is outweighed by the other § 3553(a) factors, the applicable guideline is entitled to less deference because it was not the product of the Sentencing Commission's particularized institutional role. This is a case where a variance from the Guidelines is both appropriate and justified.

### B. How the Sentencing Commission is supposed to establish sentencing guidelines

Title 18 U.S.C. § 3553(a) identifies the factors that must be considered as part of the sentencing process. Congress established the United States Sentencing Commission to formulate sentencing guidelines that reflect the §

3533(a) factors from a national perspective. *Kimbrough v. United States*, 128 S. Ct. at 574, *Rita v. United States*, 127 S. Ct. 2456, 2464 (2007). Ordinarily, the Sentencing Commission brings expertise to the sentencing process that courts lack. That expertise is the capacity to "base its determinations on empirical data and national experience, guided by a professional staff." *Kimbrough v. United States*, 128 S. Ct. at 574 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1172 (10th Cir. 2007) (McConnell, J., concurring); *see also*, *Gall v. United States*, 128 S. Ct. 586, 594 (2007) (noting that 'even though the Guidelines are advisory rather than mandatory, they are … the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.").

The Sentencing Commission also typically formulates the sentencing guidelines after developing empirical data grounded in past practices and research into recidivism rates. *See* United States Sentencing Commission, Fifteen Years of Guidelines Study (November 2004) at 14; U.S.S.G. § 1A1, intro. comment, pt. A, & 3; *Kimbrough v. United States,* 128 S. Ct. at 567. Using these statistics, the Sentencing Commission establishes offense levels for each crime and then links that offense level to a particular recommended imprisonment range. *Id.* at 14. When developed in this fashion, the resulting

advisory Guidelines range was thought to represent a reasonable sentencing range that fairly addressed the § 3553(a) factors from a national perspective. *Kimbrough v. United States*, 128 S. Ct. at 574-75.

However, because of the institutional flaws in the promulgation of U.S.S.G. § 2G2.2, courts are now routinely giving it less deference than to other guidelines that were based on past practices and Sentencing Commission institutional expertise. *See*, e.g., *United States v. Hanson*, 561 F. Supp. 2d 1004,1009 (E.D. Wis. 2008) ("[G]uideline 2G2.2 is not representative of the Commissions typical role or of empirical study … [t]he guideline has been increased despite evidence and recommendations by the Commission to the contrary."); *United States v. Shipley*, 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008) ("These modifications do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation offenses.").

The Ninth Circuit has expressly acknowledged that the child pornography guideline has numerous flaws and qualifies as a matter of law for a policy-based rejection. *United States v. Gray*, 649 F.3d 955, 963 (9th Cir. 2011). Because the guidelines were based on Congressional agendas rather

than the Commissions' own independent study, sentencing courts have the ability to deviate from them on policy grounds. *Id*. at 960.

For example, the Ninth Circuit has affirmed a five-year probationary sentence for a defendant who confronted an advisory guideline range of 41 to 51 months following his conviction for possession child pornography. *United States v. Autrey*, 555 F.3d 964, 867 (9th Cir. 2009). Autrey was a former reserve police officer who was found with 150 images of child pornography on his computer after he attempted to order additional contraband images.

The district court recognized that child pornography was "terrible stuff" and believed the defendant ordered child pornography knowing that it was "wrong and illegal." *Id*. at 868. However, the court found no evidence that Autrey ever had a hands-on offense and did not fit the profile of a pedophile seen in other cases. *Id*. The court thought it important that he had the continuing support of his family. The court believed that, under the totality of the circumstances, a sentence of imprisonment would be much more disruptive and more damaging to Autrey's rehabilitation. *Id*. at 868.

### IV.  The U.S.C. §3553(a) factors.

To vary from the advisory Guideline Range, the Court must adequately

Case 3:24-cr-00131-SLG-MMS    Document 53    Filed 10/08/25    Page 9 of 16

explain the chosen sentence but is *not* required to find extraordinary circumstances to justify the variance. *Gall v. United States*, 552 U.S. 38, 47, 51 (2007).

As the Court is aware, it is obligated to impose a reasonable sentence that is "sufficient, but not greater than necessary[.]" *Id.* at 46; § 3553(a). When determining a sentence, the Court must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant;
> and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (5) any pertinent policy statement;
> (6) the need to avoid unwarranted sentencing disparities; and
> (7) the need to provide restitution.

### a. The nature and circumstances of the offense.

Clearly, the distribution of child pornography is a very serious offense. It is one of numerous offenses which involves commercial sex acts and the abominable notion of sexual exploitation of minors. Criminalizing such acts as possession of child pornography reemphasizes the importance of destroying

any market intending to exploit children. See *United States v. Rugh*, 968 F.2d 750, 756 (8th Cir. 1992). While distribution of pornography is a serious offense, within the class of sex crimes involving exploitation of children, it is considered somewhat less culpable than the heinous offense of production of child pornography, much less those crimes involving actual physical contact or abduction. There is no suggestion that Mr. French was involved in the actual production of child pornography or that he had sexually abused children in the past; nor did he pay for such material, thereby contributing financially to its production.

Mr. French, like many others who have accessed child pornography via their computers, did not have the initial appreciation of the magnitude of the offense he was committing:

> The manner in which computer technology and high-speed internet access have made such material readily accessible in the presumed privacy of the home has removed several substantial impediments to seeking out such material that previously existed. No longer must a person travel to the seedy side of town, walk into a dirty bookstore, make a request for the sordid material to another person from whom one's identity could not be readily concealed, and pay for it. The easy availability of the material at no cost with the click of a mouse…leaves little but one's natural aversion to depiction of the abuse and degradation of children to stand in the way of obtaining it.
>
> …
>
> A further fact seems to be the lack of appreciation of the harm that simply viewing such material does to children. In some respects, the

internet seems analogous to a huge file cabinet containing an almost limitless number of documents and other forms of information. Under this view, accessing child pornography can be rationalized as simply pulling out a drawer and looking at a photo that someone else took in the past. As long as the individual who accesses the pornography is not himself abusing children to produce it, selling it in order to profit from it, or paying for it so as to stimulate demand for it, he can tell himself that he has done no harm to the children depicted.

*United States v. Ontiveros*, 2008 WL 2937539 (E.D. Wis.2008).

As addressed in *Ontiveros*, though the above factors do not excuse the behavior, they do suggest an explanation for why people such as Mr. French, who at 28 has no prior criminal history, commit such offenses. Once they realize that such conduct does substantial harm to children, many offenders are unlikely to repeat their actions.

**b. Mr. French's history and characteristics support the recommended sentence.**

Mr. French did not enjoy a warm homelife as a child. His parents divorced when he was very young, and his mother remarried an abusive alcoholic. School was little respite, as Mr. French was bullied for being small and being gay. Finances were always tight, and his mother relied on family to make ends meet.

Mr. French struggled as a young adult, for acceptance from his distant father and for a sense of purpose. He also struggled to make ends meet, but

Case 3:24-cr-00131-SLG-MMS    Document 53    Filed 10/08/25    Page 12 of 16

is proud of the fact that he has always worked. After a short marriage, Mr. French decided to join the U.S. Air Force, which brought him to Alaska.

The consequences Mr. French faces extend far beyond incarceration. He will be a life-long felon. He will be supervised for decades upon his release. He will be required to register as a sex offender. He is forever and always marked by this conviction. Working to support himself was always a point of pride for Mr. French, and he is worried about his employment prospects upon his release.

Despite the nature of these charges, Mr. French maintains strong support from his family. He intends to return to Virginia upon his release and hopes to serve his time there in order to be close to his mother, with whom he speaks regularly.

### c. Deterrence and public safety are satisfied by the fact of this conviction, not the severity of the sentence.

As research clearly shows, it is not the severity of the sentence that provides a deterrent effect—either general or specific—rather is it the *certainty* that criminal behavior will be detected and punished. *See* Valerie Wright, "Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment" (The Sentencing Project, November 2010) http://www.antoniocasella.eu/nume/Wright_2010.pdf. (last accessed June 16,

Case 3:24-cr-00131-SLG-MMS    Document 53    Filed 10/08/25    Page 13 of 16

2025). Overall, research shows that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the manner one might expect of rational decision makers. Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research, 28- 29 (2006). "There is generally no significant association between perceptions of punishment levels and actual levels…implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." Gary Kleck, et al, The Missing Link in General Deterrence Theory, 43 Criminology 623 (2005).

For these reasons, a sentence of 120 months followed by 5 years of supervised release more than satisfies this factor. In general, sex offenders know that they could be sent to prison if caught. General and specific deterrence will be achieved with a sentence of 120 months followed by 5 years of supervised release.

### d. A sentence of 120 months in prison followed by a period of supervised release will provide Mr. French with educational or vocational training, as well as sex offender treatment.

Mr. French is a young man in need of sex offender treatment. A sentence of within the Guideline range is not necessary for Mr. French to receive treatment. In fact, it is the real-world, highly monitored application of the

skills gained in treatment that will be the ultimate test for Mr. French. Regardless of the court's sentence, he will be a relatively young man upon his release. The sooner he learns to adapt and control his behavior outside of incarceration, the better.

e. **The government and probation's recommended sentence would constitute a disparate sentence when compared to similarly situated defendants.**

## V. CONCLUSION

Mr. French respectfully urges the Court to accept the jointly recommended sentence of 120 months in prison. He further requests a term of supervised release of five years.

DATED at Anchorage, Alaska this 8th day of October, 2025.

Respectfully submitted,
FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

*/s/ Jane M. Imholte*

Jane M. Imholte
Assistant Federal Defender

<u>Certificate of Service</u>:

I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on October 8, 2025. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.

*/s/ Jane M. Imholte*

*United States v. Caleb French*
Case No. 3:24-cr-00131-SLG-MMS                                                                    Page 16